IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Reggie L. Kelley, #13608-171, ) | |
| ) | Civil Action No. 8:07-3859-HMH-BHH |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Sgt. Jarvis, Dr. Motyeka, ) | |
| and Nurse Pamela Harmon,[1] ) | |
| ) | |
| Defendants. ) | |
| ) | |

The plaintiff, a federal prisoner proceeding *pro se*, alleges his constitutional rights have been violated pursuant to 42 U.S.C.§ 1983 when he was a pre-trial detainee housed at the Alvin S. Glenn Detention Center ("ASGDC"). (Compl. at 1.) This matter is before the Court on the defendants' motions for summary judgment (Dkt. # 30, 33, and 35) and the plaintiff's motions for summary judgment (Dkt. # 41 and 49.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

---

[1] It appears that Dr. Moteyka's last name is actually spelled Motycka. (*See* Def. Motyeka's Summ. J. Mot.) However, in this report the undersigned will use the spelling as set forth in the caption of the complaint for consistency.

The plaintiff brought this action on December 4, 2007, seeking damages for alleged civil rights violations.[2] On May 28, 2008, the defendant Jarvis filed a motion for summary judgment. By order filed May 29, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On June 4, 2008, the defendant Dr. Motyeka filed a separate motion for summary judgment. By order filed June 5, 2008, pursuant to *Roseboro*, the plaintiff was again advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond. On June 12, 2008, the defendant Nurse Harmon also filed a separate summary judgment motion. By order filed June 18, 2008, pursuant to *Roseboro*, the plaintiff was again advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond.

On June 30, 2008, the plaintiff responded to the defendant Jarvis' summary judgment motion and on July 14, 2008, he responded to the defendant Dr. Motyeka's summary judgment motion. Also, on July 14, 2008, the plaintiff filed his own motion for summary judgment. On July 25, 2008, the plaintiff filed another motion for summary judgment in which he responded to the defendant Nurse Harmon's motion for summary judgment.

---

[2]It appears the plaintiff erroneously mailed his § 1983 complaint to state court on November 9, 2007. The state court forwarded the complaint to this Court and it was filed December 4, 2007. (Dkt. # 1.) In any event, the undersigned notes that the date of filing is not an issue in this case because the statute of limitations has not been raised as a defense.

2

## FACTS PRESENTED

The plaintiff is a federal inmate currently incarcerated at the United States Penitentiary in Pollock, Louisiana. In his complaint, the plaintiff alleges that, while he was a pretrial detainee at the ASCDC, the defendants were deliberately indifferent to his serious medical needs, intentionally delayed and denied him medical treatment, and were negligent in his diagnosis and treatment. (Comp. at 2.; & Attach. #1 - Pl.'s Aff. at 1.)

In his affidavit attached to his complaint, the plaintiff sets forth the facts of his claims. (Compl. Attach. #1 - Pl.'s Aff.) He alleges that on November 21, 2005, he was injured while being transported in a van from a preliminary hearing to the ASGDC. (*Id.* at ¶ 4.) He alleges the driver was speeding and suddenly slammed on the brakes causing him to be thrown to the floor while in chains and handcuffed. (*Id.*) He alleges he rode on the floor of the van for approximately 15-20 minutes until the van arrived at the ASGDC. He alleges the other inmates were removed and after about 20 minutes, the defendant Dr. Motyeka arrived.[3] He states that he told the Dr. Motyeka that he had pain in his neck and back. He alleges he was pulled from the van by his feet while he remained shackled and chained in cuffs. (*Id.*)

He then alleges Dr. Motyeka and another officer grabbed him by both arms and carried him to the door. He alleges he could not lift his legs to step. (Compl. Attach. # 1

---

[3] In his complaint, the plaintiff actually refers to this person generically as an EMS worker. However, it is apparent from other documents in the record that the EMS worker is actually the defendant Dr. Motyeka. (*See* Pl.'s Mem. Supp. Summ. J. Mot. at ¶ 4 & Aff. ¶ 4; *see also* Compl. Attach. # 1- Pl.'s Aff. ¶ 11.)

-Pl.'s Aff. ¶ 4.) He alleges that the defendant Sgt. Jarvis told him he would be alright and told him to walk back to the dorm area. (Id. at ¶ 5.) He states that he entered the dorm area and asked his roommate to help him to his bed. He alleges that "they" refused to take me to medical and all staff members acting upon Sgt. Jarvis' orders refused to call medical for him. (*Id.*) He alleges Sgt. Jarvis made it clear that he did not want the plaintiff to go to the hospital on his shift. (*Id.*)

The plaintiff states that he "remained in [his] bed for one month without taking a bath or getting out of [his] bed for anything." (Compl. Attach. # 1 -Pl.'s Aff. ¶ 6.) He alleges he sought medical care and when medical personnel called for him, he asked for a wheelchair because he was unable to walk. He states that because he could not walk to them, medical personnel refused to see him for a second time. (*Id.*)

He alleges that on February 11, 2006, he again requested medical treatment for his neck and back pain and he was seen on February 14th by the nurse. He states the nurse referred him to the doctor and he was seen by the doctor on February 17th. He alleges the doctor refused to x-ray him. He then alleges on April 3, 2006, he again requested medical treatment for his neck and back pain.

The plaintiff alleges that he "still experiences pains in [his] back on the regular and have to keep a bottle of aspirin and ibuprofens on stand by." (Compl. Attach. #1 - Pl.'s Aff. ¶ 13.) He is seeking actual damages of $500,000 for the defendants' negligence, deliberate indifference to his medical needs, and in delaying and denying him medical

treatment. (Compl. at 5.) He is also seeking nominal and special damages of $20,000 for a conspiracy claim and punitive damages. (*Id.*)

## APPLICABLE LAW

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all interferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-

moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## **DISCUSSION**

The plaintiff alleges a claim of medical indifference to his serious medical needs. The defendants have filed three separate motions for summary judgment. However, each defendant contends the plaintiff has failed to establish that a claim of medical indifference. (*See* Dkt. # 30, 33, and 35.) The undersigned agrees.

Medical claims of a pretrial detainee, such as the plaintiff, are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. *See City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239 (1983). However, the inquiry as to whether a pretrial detainee's rights were violated under the Fourteenth Amendment is the same as that for a convicted prisoner under the Eighth Amendment (deliberate indifference to a serious medical need). *See Martin v. Gentile,* 849 F.2d 863, 871 (4th Cir.1988) (*citing Estelle v. Gamble,* 429 U.S. 97 (1976)).

6

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle*, 429 U.S. at 102. This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104.

"Deliberate indifference is a very high standard. In *Miltier v. Beorn,* the Fourth Circuit Court of Appeals noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." 896 F.2d 848, 851 (4th Cir. 1990). Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle*, 429 U.S. 104; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir.1986). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" *Coppage v. Mann*, 906 F.Supp. 1025,

1037 (E.D.Va. 1995) (*quoting Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987)).

Further, disagreements between an inmate and medical personnel over diagnosis or course of treatment and allegations of malpractice or negligence in treatment are not cognizable constitutional claims under the Eighth Amendment. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Estelle*, 429 U.S. at 105-06.  Claims of medical judgment are not subject to judicial review.  *Russell v. Sheffer*, 528 F.2d 318, 318-19 (4th Cir. 1975). Additionally, an inmate is not entitled to unqualified access to health care; the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).

In this case, the plaintiff has failed to establish that he suffered from a serious medical need or that the defendants were deliberately indifferent to any of his medical needs. The plaintiff acknowledges that he was seen by Dr. Motyeka while still in the van (compl. Attach. 1).  Likewise, the plaintiff's medical records establish that the plaintiff was examined by Dr. Motyeka on that day and Dr. Motyeka concluded the plaintiff had not suffered a back or neck injury.  Additionally, the plaintiff's medical records also show that subsequently he was seen multiple times by the medical personnel at the ASGDC for complaints of back pain.  (Def. Jarvis' Mem. Supp. Summ. J. Mot. Ex. A - Harrell Aff. at 314.7697-0001 through 0004.)  The plaintiff, however,  alleges he was denied a wheelchair and an x-ray and that Dr. Motyeka offered the plaintiff only ibuprofen which he refused.

The plaintiff's allegations rise only to a level of mere disagreement over the treatment he was offered, which is not an actionable constitutional claim. He has offered no proof that he has not been provided adequate medical treatment, nor has he shown deliberate indifference on the part of the defendant. At most, there was a delay in treating the plaintiff or a disagreement in the treatment. "[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1188 (11th Cir.1994). As stated above, a medical need is serious if a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" *Coppage v. Mann*, 906 F.Supp. at 1037. The plaintiff has failed to allege how any such delay in his treatment resulted in a detrimental effect or has caused him a life-long handicap or permanent loss. Accordingly, the plaintiff has failed to state a claim for deliberate indifference to his medical needs.

Furthermore, the defendant Jarvis contends that as a non-medical provider the plaintiff has failed to establish a claim of medical indifference against him. The undersigned agrees. The Fourth Circuit has held that to bring a denial of medical treatment claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier v. Beorn*, 896 F.2d 848 (4th Cir.1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Id.* Under these principles, the

9

plaintiff has not alleged facts stating any claim actionable under § 1983 regarding his course of medical treatment against the defendant Jarvis. The plaintiff alleges that the defendant Jarvis made a medical decision and ordered Dr. Motyeka not to treat the plaintiff. However, the medical record does not support this allegation. The medical records show that the plaintiff was examined while in the van by Dr. Motyeka and he concluded that the plaintiff was not injured. The defendant Jarvis was entitled to rely on this opinion.

In any event, even assuming the defendant Jarvis delayed the plaintiff from receiving medical treatment, as the plaintiff alleges, as discussed above, the plaintiff has failed to allege how any such delay in his treatment resulted in a detrimental effect or has caused him a life-long handicap or permanent loss. Accordingly, based on the foregoing, the plaintiff has failed to establish a claim of medical indifference and the defendants' motions for summary judgment should be granted.

**Conspiracy Claim**

To the extent that the plaintiff alleges a conspiracy claim (compl. at 5), this claim should also be dismissed. To establish a civil conspiracy under § 1983, a plaintiff must present evidence that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in the deprivation of a constitutional right. *Hinkle v. City of Clarksburg,* 81 F.3d 416, 421 (4th Cir. 1996). A plaintiff must come forward with specific evidence showing that each member of the alleged conspiracy shared the same conspiratorial objective. *Id.* To survive a summary judgment motion, a

plaintiff's evidence must reasonably lead to the inference that the defendants came to a mutual understanding to try to "accomplish a common and unlawful plan." *Id.* Further, a plaintiff's allegation must amount to more than "rank speculation and conjecture," especially when the actions are capable of innocent interpretation. *Id.* at 422. The plaintiff must show that the defendants possessed an intent to commit an unlawful objective. *Id.*

Here, the plaintiff has presented nothing other than his own conclusory speculation that there was a conspiracy. He has failed to show a meeting of the minds among the defendants to deprive him of his constitutional rights. Accordingly, the plaintiff's claims of conspiracy should be dismissed.

**Qualified Immunity**

The defendant also contend that they are entitled to qualified immunity. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Harlow,* 457 U.S. at 818. The Court of Appeals for the Fourth Circuit has stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was

> 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

*Wiley v. Doory*, 14 F.3d 993 (4th Cir.1994) (internal citations omitted).  As discussed above, the plaintiff fails to show that the defendants violated any of his clearly established constitutional or statutory rights. Therefore, the defendants are entitled to qualified immunity in their individual capacities.

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the Defendants' Motions for Summary Judgment (Dkt. # 30, 33, and 35) be GRANTED; the Plaintiff's Motions for Summary Judgment be DENIED (Dkt. # 41 and 49); and the Plaintiff's claims be DISMISSED.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

November 10, 2008
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 10768
> Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).